A97A1055. TRUSTEES OF TRINITY COLLEGE et al. v. FERRIS.
(491 SE2d 909)

BLACKBURN, Judge.

On March 29, 1991, while practicing for a collegiate rowing regatta in Augusta, Eric W. Ferris, a member of the Trinity College men's varsity team, was injured when he was struck in the back by another boat operated by members of the women's varsity team. He sued the Augusta Rowing Club, the host of the event; the Trustees of Trinity College; Steve Fluhr, his coach; Norman T. Graf, the coach of the women's team; and Serena Lau, the coxswain of the boat that struck him. On the eve of trial, Ferris dismissed Augusta Rowing Club with prejudice. During trial, he dismissed Lau, saying that she did nothing wrong. The jury returned a verdict for Ferris against the remaining defendants, and the defendants appeal, alleging numerous errors.

1. Because Ferris had signed a release document releasing all regatta participants from any claims except those arising out of gross negligence or wilful or wanton misconduct, the primary issue at trial was whether appellants were guilty of gross negligence. Appellants contend that the court erred in denying their motion for directed verdict because there was no evidence of gross negligence.

"[I]n considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion. . . . [T]he standard of appellate review of the trial court's denial of a motion for a directed verdict is the 'any evidence' standard." (Punctuation omitted.) *Mattox v. MARTA*, 200 Ga. App. 697, 698 (1) (409 SE2d 267) (1991).

The evidence revealed the following. Augusta Rowing Club was the sponsor of a rowing regatta to be held on Saturday, March 30, 1991. The Trinity College teams arrived a week early and practiced on the river every day. The race course was laid out in four lanes, with lane 1 closest to the Georgia shore and lane 4 closest to the South Carolina shore. The part of the river between the race course and the Georgia shore was designated lane 0, and the part between the race course and the South Carolina shore was designated lane 5. Prior to Friday, March 29, the traffic pattern for boats on the river was the usual counterclockwise or right-hand rule in effect for rivers. That is, boats were to proceed upstream on the right-hand side of the river and return on the left. However, on Friday, March 29, which was designated as practice day, the traffic pattern was changed to a

left-hand rule to enable boats to practice on the actual course. On that day, boats were to proceed upstream on the left-hand side of the river along the race course, and, if they wished to continue practicing, return on the right-hand, or South Carolina, side (lane 5). If boats were finished practicing, they could return to the launch site along the left-hand side between lane 1 and the Georgia shore (lane 0). This left-hand rule was set forth in materials supplied to competing schools by the Augusta Rowing Club, which materials also provided that practice times were to begin at 8:00 a.m. on Friday morning.

Steve Fluhr was the coach of the men's team at Trinity College, and also oversaw the entire rowing program. On Friday morning, he informed the crews of the two men's boats that the left-hand rule was in effect. The two boats put into the water some time before 8:00 a.m. and proceeded with a practice run up lanes 1 and 2, with Fluhr following in a motorized launch. Each boat consisted of eight male rowers and one female coxswain. Only the coxswain was facing in the direction the boat was traveling, and her view was partially obstructed by the rowers ahead of her.

Fluhr, by way of deposition, testified that he noticed a women's boat coming downstream towards them, but believed it was outside the race course, between lane 1 and the Georgia shore. A witness in one of the boats testified that he heard Fluhr tell the coxswains of the men's boats that the women were coming down the river. However, Fluhr did not tell the coxswains to stop. The women's boat collided with one of the men's boats, severely injuring Ferris.

Lau, the coxswain of the women's boat, testified that she was never informed by her coach, Graf, that the left-hand rule was in effect on the day of the accident. Graf, by way of deposition, testified that he could not remember whether he had informed his team of the changed traffic pattern, or whether he had seen the material provided by the Augusta Rowing Club regarding traffic patterns on the practice day. Fluhr testified that he had provided Graf with such materials. He also testified that he believed Graf should have been in the water on a launch with the women's team at the time of the accident.

"When facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable men as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury." (Punctuation omitted.) *Bostwick v. Flanders*, 171 Ga. App. 93, 94 (318 SE2d 801) (1984). We believe the facts were sufficient to present a jury question regarding appellants' gross negligence. The jury could have concluded that Graf, as coach of the women's team, was grossly negli-

gent in failing to advise Lau of the change in the traffic pattern, in failing to apprise himself of such change, and in failing to be on the water supervising his team at the time of the incident. The jury could have concluded that Fluhr had the best view of the situation and was grossly negligent in failing to stop the men's boats when he became aware of the presence of the women's boat on the course. The jury could also have concluded that Fluhr, as head of the rowing program, was grossly negligent in failing to ensure that the women's team was advised of the traffic pattern change. Accordingly, as there was evidence from which the jury could have found gross negligence, this enumeration is without merit.

2. Appellants contend that the trial court erred in failing to hold a pre-trial conference and issue a pre-trial order. We disagree.

This Court has held that "[i]t is error to refuse to grant a pre-trial hearing and order pursuant to [OCGA § 9-11-16] where a timely motion to this effect has been entered." *Kickasola v. Jim Wallace Oil Co.*, 144 Ga. App. 758, 761 (11) (242 SE2d 483) (1978); see also *Malcolm v. Cotton*, 128 Ga. App. 699, 701 (6) (197 SE2d 760) (1973). However, it is not error to refuse a pre-trial conference where the motion is untimely. See *Kickasola,* supra at 762 (demand made on day of trial held untimely).

On April 24, 1995, the trial court denied appellants' motion for a pre-trial conference on the grounds that it was not timely. The court noted that the motion had not been filed until after the case was placed on a ready list for trial, and that the case would be called for trial before a conference would be held. Based on the record before us, we cannot say that the trial court erred in this ruling.

After the trial court's ruling, however, the case did not proceed to trial until June 25, 1996, 14 months after the order denying the motion. During this 14-month interim, there is nothing in the record to indicate that appellants filed a renewed motion or otherwise renewed their request to the court to hold a pre-trial conference, notwithstanding the untimeliness of any such request. It was not until the day of trial that appellants indicated they were not waiving their right to a pre-trial conference.

In these circumstances, the court did not err in failing to hold a pre-trial conference. The April 24, 1995 order clearly stated that the motion was being denied because it was untimely, and in any event, the case would be called for trial before the conference could be held. Once it became apparent that the case would not proceed to trial as anticipated, it was incumbent on appellants to renew their request for a pre-trial conference, which they did not do. Appellants cannot sit quietly for 14 months, and then on the day of trial complain that they have been denied a pre-trial conference. Accordingly, this enumeration is without merit.

3. Appellants contend they were entitled to a directed verdict on the grounds of Ferris' assumption of the risk. They note that the release document signed by Ferris in connection with the regatta stated that "I acknowledge that . . . [b]y virtue of my participation I risk bodily injury[,] paralysis, dismemberment, and death, and other loss including damage to property. . . . I knowingly and freely assume all such risk." In order to compete in athletic activities for Trinity College, Ferris also signed documents stating that he "[h]as been informed and understands that there are inherent risks involved in sports competition. These risks may involve serious physical injury including catastrophic head and back injuries or even death."

"In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. . . . The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. . . . The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities." *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

"Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, questions of . . . assumption of risk . . . are for the jury." (Punctuation omitted.) *Murphy v. Wometco Cable TV of Fayette County*, 223 Ga. App. 640, 641 (478 SE2d 398) (1996). In this case, although Ferris was aware of the general risks inherent in rowing, the evidence did not require a finding that he was aware of and acquiesced in the specific risk that he would be injured in the manner he was as a result of appellants' gross negligence. As it cannot be said as a matter of law that Ferris assumed the particular risk to which he was subjected, the trial court did not err in denying appellants' motion for directed verdict on this ground.

4. Appellants contend the trial court erred in failing to dismiss Ferris' complaint after he dismissed Lau, the coxswain of the boat that struck him, stating that she did nothing wrong. Appellants contend that Lau was the only active tortfeasor and that their liability was solely derivative of hers. This contention is without merit, however, as appellants' liability is not merely derivative of Lau's. Fluhr's and Graf's liability is based upon their own independent acts of gross negligence, and the Trustees' liability is based upon principles of respondeat superior.

5. Appellants contend that the dismissal of Augusta Rowing

Club, the only Georgia defendant, stripped the court of jurisdiction over the non-resident appellants, and that the court therefore erred in failing to dismiss Ferris' complaint. This contention is without merit, however, as jurisdiction over appellants was not predicated upon the presence of a local defendant, but upon their commission of a tort in the State of Georgia. See OCGA § 9-10-91 (2).

6. Appellants contend the trial court erred in allowing a previously unidentified witness to testify and in failing to grant a continuance of the trial. For the reasons set forth below, we disagree.

On the morning trial was scheduled to begin, Ferris' attorneys identified a new witness, Luke McCarthy, who had been on one of the men's boats the day of the accident. McCarthy had not previously been identified as a witness in response to interrogatories. The trial court allowed Ferris to supplement his interrogatory responses to identify the new witness and the substance of his testimony, and provided a one-day continuance of the trial so that appellants could take McCarthy's deposition that night.

Appellants contend the court should have excluded McCarthy's testimony. The decision to allow testimony of a witness who has not been identified in response to interrogatories lies in the sound discretion of the trial judge. *Sackett v. L. L. Minor Co.*, 244 Ga. 375, 376 (1) (260 SE2d 37) (1979). "Exclusion of a witness is proper only where there has been a deliberate suppression of the witness' name. *Jones v. Atkins*, 120 Ga. App. 487 (2) (171 SE2d 367) (1969)." *Brewer v. Brewer*, 249 Ga. 517, 518 (3) (291 SE2d 696) (1982). In this case, although McCarthy had been Ferris' roommate for three months before trial, and a social friend for a year before trial, Ferris claimed that he did not know McCarthy was a witness to the incident until shortly before trial. Although appellants contend that this explanation is implausible, we cannot say that the trial court abused its discretion in allowing the testimony in this regard.

Appellants also contend that the court erred in failing to continue the trial due to the surprise witness. Where the plaintiff produces a surprise witness, the court should allow "a postponement of the trial for a sufficient length of time to enable the defendant to interview [the witness], check the facts to which [he] would testify, and, if indicated, arrange to secure rebuttal evidence or to impeach [him]. . . . [T]he trial judge should exercise his discretion as to the length of time that would be necessary for counsel." (Punctuation omitted.) *Jones*, supra at 491 (2). In this case, the judge granted a one-day continuance to allow appellants to take McCarthy's deposition, and required Ferris to supplement his interrogatory responses to specify the matters to which McCarthy would testify.

Although appellants contend they were entitled to a longer continuance because McCarthy provided new testimony which materi-

ally changed the nature of the trial, this is not borne out by the record. Appellants contend that McCarthy's testimony was particularly critical because he provided the only evidence that Fluhr was aware of the presence of the women's boat on the river just before the accident. However, Fluhr himself, in deposition testimony read into evidence at trial, admitted that he had seen the women's boat coming down the river.

Appellants also contend that McCarthy provided the only evidence the accident occurred on the Georgia side of the river, thus providing the sole basis for jurisdiction over appellants under the Long-Arm Statute. However, both Fluhr and Graf admitted that the accident occurred on the Georgia side of the river. McCarthy's testimony was essentially cumulative of the appellants' own testimony. Appellants have not demonstrated in what manner they were harmed by the one-day continuance. We cannot therefore say that the court abused its discretion in allowing such continuance of the trial.

7. Appellants contend that the court erred in failing to "control" McCarthy and in denying appellants their right to a thorough and sifting cross-examination. These contentions are without merit. Although the record reveals that McCarthy would often provide long, narrative responses to appellants' questions, such responses were typically in response to open-ended questions by appellants' counsel. Nothing in the record demonstrates that appellants were denied the right to a thorough and sifting cross-examination of McCarthy or any other witness.

8. Appellants contend the trial court erred in charging the jury, noting that in some instances the court used the word "negligence" instead of "gross negligence." However, appellants' counsel failed to object to the charge on these grounds. "Failure to except before verdict generally results in a waiver of any defects in the charge, [unless the charge contains] a substantial error which was blatantly apparent and prejudicial, and which resulted in a gross miscarriage of justice." (Punctuation omitted.) *Pope v. Goodgame*, 223 Ga. App. 672, 675 (3) (c) (478 SE2d 636) (1996); see OCGA § 5-5-24. This "substantial error" exception is not applicable in this case. The court fully charged the jury on the difference between ordinary and gross negligence, and charged that Ferris must prove appellants were grossly negligent in order to recover. Viewing the charge as a whole, the few instances in which the judge referred to "negligence" instead of "gross negligence" did not amount to a substantial error requiring appellate review in the absence of an objection.

9. Appellants contend the court erred in failing to grant a mistrial after Ferris' counsel made allegedly improper remarks during jury selection. During voir dire, Ferris' counsel stated that "[w]e don't have any reason to strike anybody that's sitting in that jury. . . .

We'll just let him finish picking the jury. We don't have anybody to strike." The trial court denied appellants' motion for a mistrial, but issued a curative instruction telling the jury panel that the remark was improper and should be disregarded.

"The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. Unless it is apparent that a mistrial is essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with." (Citations and punctuation omitted.) *Stoner v. Eden*, 199 Ga. App. 135, 137 (2) (404 SE2d 283) (1991). Under these circumstances, the trial court did not abuse its discretion in denying a mistrial and issuing a curative instruction.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 11, 1997 — ■

*Woodall & Mackenzie, John T. Woodall, Peter A. Giusti*, for appellants.

*Guy E. Davis, Jr., John P. Batson*, for appellee.