**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD AND MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2013**

# In the Court of Appeals of Georgia

A12A2063. CITY OF ATLANTA v. VICTOR BENNETT et al.

DILLARD, Judge.

Following a trial by jury and the return of a verdict by special interrogatory in this class-action lawsuit brought by City of Atlanta firefighters ("the appellees"), the Superior Court of Fulton County entered a judgment against the City of Atlanta ("the City"), adopting the jury's finding that a 2010 firefighter promotional examination was tainted by cheating and issuing a permanent injunction related to any promotions that would be made in the aftermath.[1] On appeal, the City argues that (1) the trial court erred by excluding the testimony of a City witness, (2) the trial court erred by denying the City's motion for directed verdict, (3) the jury's verdict was not

---

[1] We note that the Supreme Court of Georgia recently vacated portions of the trial court's injunction order in *Barham v. City of Atlanta*, 292 Ga. 375 (738 SE2d 52) (2013).

authorized by the evidence, (4) the trial court's injunction was not supported by evidence, and (5) the trial court erred in submitting the appellees' claim for OCGA § 13-6-11 fees to the jury when they failed to give ante-litem notice. Because we agree with the City that the trial court abused its discretion in excluding the testimony of a City witness, we reverse and remand for a new trial.

This case arose when the appellees filed a class-action complaint in July 2010, contending that the City of Atlanta Fire-Rescue Department's 2010 lieutenant promotional examination was tainted by cheating. Based on the appellees' contention that the City failed to conduct a fair administration of the promotional examination, the lawsuit (1) alleged violations of statutory obligations, breach of contract, and equal protection on behalf of firefighters who "did not cheat," and (2) sought equitable relief in the form of an injunction and OCGA § 13-6-11 attorney fees.

When the case proceeded to trial, the appellees' evidence of cheating included the fact that among the 173 test takers, five of the eight highest scorers were in the same study group; the study group in question had close connections to high-ranking fire-department officials, one of whom was involved in vetting the multiple-choice exam questions and answers, and maintained computer access to same prior to the exam's administration; and expert testimony regarding statistical data that showed the

2

improbability of the 2010 score array based on, *inter alia*, the highest scores in past exam years, the 2010 high scorers' significantly lower scores on previous exams, and comparisons between the 2010 high scorers' outstanding results on the written multiple-choice portion of the exam and their much poorer results on the oral portion of the test.

In the course of the trial, one theory of cheating suggested by the appellees was that the test takers accused of cheating could have accessed the exam questions and answers electronically via a document maintained by a high-ranking fire-department official who assisted in vetting the questions for the 2010 examination. The evidence at trial also focused on the differences between exam development and security in previous years, when the human-resources department was responsible for such matters, and exam development and security in 2010, when the job was outsourced to Booth Research Group in Colorado.

Following the presentation of evidence by both sides, the jury returned a verdict in the appellees' favor, and the trial court entered judgment on that verdict. This appeal by the City follows, in which it makes the arguments enumerated *supra*.

1. First, the City contends that the trial court abused its discretion by excluding from trial the testimony of the owner of Booth Research Group, the company that developed the 2010 promotional examination. We agree.

At the outset, we note that the admission of evidence is "within the sound discretion of the trial court and appellate courts will not interfere absent abuse of that discretion."[2] Likewise, the issue of the admissibility or exclusion of expert testimony "rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion."[3] Nevertheless, we reiterate that "[e]vidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence."[4]

In the case *sub judice*, the record reflects that after the appellees rested their case, the City sought to call Dr. Walter Booth as a witness to rebut the appellees' criticisms of the security surrounding development of the 2010 exam, particularly the

---

[2] *Am. Petroleum Prods., Inc. v. Mom & Pop Stores, Inc.*, 231 Ga. App. 1, 7 (3) (497 SE2d 616) (1998) (punctuation omitted).

[3] *Levine v. Suntrust Robinson Humphrey*, __ Ga. App. __, __ (3) (740 SE2d 672) (2013) (punctuation omitted).

[4] *Am. Petroleum Prods.*, 231 Ga. App. at 7 (3) (punctuation omitted).

4

suggestion that cheating could have occurred by accessing the electronic document maintained by a high-ranking fire department official after the exam questions and answers were vetted by three subject-matter experts from the department. The appellees objected to the admission of Booth's testimony on the basis that he was an undisclosed expert witness, but the City disagreed with the appellees' characterization of Booth's expected testimony as being that of an expert and noted that Booth had been listed in the pretrial order as a "may call" witness.

Following argument by the parties, the trial court disallowed Booth's testimony and took issue with both what it deemed a delayed identification of the witness in the pretrial order and the City's potential use of Booth as an expert when the City never identified him as one. The City then requested an opportunity to make a proffer of Booth's proposed trial testimony, which the court allowed outside the jury's presence.

Thereafter, Booth testified that his company was primarily involved in "promotional written tests, assessment centers, and oral interviews for police and fire departments across the nation" and that the company developed the 2010 lieutenant and captain firefighter promotional examinations for Atlanta. Booth then explained how test bank questions are generally sent to departments for review, detailing that test items are sent under password protection; that more items will be sent for review

5

than will actually appear in the final exam, and the department "never knows which items will be actually used on the final exam"; that the question numbers and order change between review by the department and creation of the final exam; that the multiple-choice-answer letter designations will switch on many items between review by the department and creation of the final exam; and that, in Atlanta, because the lieutenant and captain exams were based on the same source material, some items were moved between the two exams with the company making "the final determination of which items would appear on which test." Finally, Booth testified that other than his staff, no one is allowed to see a final version of a test prior to exam administration and that the company never had any problems with breaches, hacking, or leaks.

The trial proceeded without the jury hearing Booth's testimony. But at a later recess, the court expressed reservations about the decision to exclude the testimony, with the judge acknowledging that she "had some concerns about the ruling at the time" and was "afraid that it's reversible error for me to exclude . . . probative[,] relevant evidence even if it's a clear discovery violation."

In voicing her concern, the trial judge cited this Court's decision in *Hart v. Northside Hospital*,[5] in which we held that although a party had inexcusably failed to "faithfully engage in discovery in compliance with the extended discovery deadline"[6] and, thus, had failed to timely identify expert witnesses, "the trial court abused its discretion in granting [a] motion in limine seeking to exclude testimony from the . . . two experts who were identified."[7] Indeed, we noted that "[t]he only appropriate remedy for [the] alleged failure to update [the] discovery responses . . . was postponement of trial or a mistrial."[8] Based on this precedent, the trial court in the case *sub judice* indicated that it would reverse its own ruling and permit Booth's testimony, and the City offered to make Booth available to the appellees for a deposition later that evening.

But in response to the trial court's new decision, the appellees argued that *Hart* was distinguishable based on footnote 9 of that opinion, which emphasized that the case was not one in which "a party violated a court order explicitly directing the party

---

[5] 291 Ga. App. 208 (661 SE2d 576) (2008).

[6] *Id.* at 209 (1)

[7] *Id.* at 210 (1).

[8] *Id.* (punctuation omitted).

to identify an expert witness for trial, nor did the order at issue warn parties of potential sanctions for failure to meet deadlines, such as the exclusion of evidence or the dismissal of the action."[9] In light of that fact, we "limit[ed] our holding to the specific issue before us, and [did] not purport to limit a trial court's authority to issue such orders."[10] Thus, the appellees thereafter maintained that Booth was an expert witness who had never been identified as such despite repeated scheduling-order deadlines and extensions by the trial court to allow for the identification of expert witnesses. And hearing this argument, the trial court again changed course and determined that, "[i]n light of having three orders saying you need to identify these people and you all failing to identify Booth, I will stick to my original order." Although the City repeated its assertion that Booth was not being presented as an expert, the trial court disagreed and determined that "the areas of technology and security do rise to the level of expertise . . . ."

On appeal, the City contends that the trial court's decision to exclude Booth's testimony as being that of an expert witness who was unidentified in violation of court orders was an abuse of discretion because Booth was presented as a fact

---

[9] *Id.* at 210 (1) n.9.

[10] *Id.*

witness, not an expert. The appellees, however, still argue that Booth was an expert witness and that the City violated successive court orders in failing to identify him as such. But because we agree with the City that Booth's proffered testimony was not that of an expert, we likewise agree that the trial court abused its discretion by excluding Booth's testimony on the basis that he was undisclosed as an expert in violation of successive orders.

In Georgia, when "scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue,"[11] a witness who is qualified as an expert "by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise"[12] if (1) the testimony is based on sufficient facts or data admitted into

---

[11] Former OCGA § 24-9-67.1 (b), *repealed by* Ga. Laws 2011, Act 52, § 2 (effective Jan. 1, 2013). OCGA § 24-7-702 (b), which became effective January 1, 2013, contains language identical to that quoted above from former OCGA § 24-9-67.1, but the provisions of Georgia's new evidence code "apply to any motion made or hearing or trial commenced on or after" January 1, 2013. Ga. Laws 2011, Act. 52, § 101. Because the relevant trial occurred before this date, the prior evidence code applies in the case *sub judice.*

[12] Former OCGA § 24-9-67.1 (b).

evidence, (2) the testimony is the product of reliable methods and principles, and (3) the witness applied the methods and principles reliably to the relevant facts.[13]

Here, despite the appellees' contentions to the contrary, Booth's testimony was very clearly that of a fact witness with personal knowledge of his company's general operating procedures in developing promotional exams for review and eventual administration by police and fire departments.[14] And although that testimony touched on basic security features in the manner of password protection and scrambling answers, this testimony was based upon observable facts and was not the sort of testimony that could reasonably be characterized as an expert opining as to the sufficiency or insufficiency of security measures.[15] Accordingly, the trial court abused

---

[13] *See id.*

[14] *Cf. Jones v. Scarborough*, 194 Ga. App. 468, 470 (3) (390 SE2d 674) (1990) (holding that trial court erred in prohibiting discovery or testimony from a witness it deemed an expert when appellant merely sought to discover facts that were observed by the witness).

[15] *Cf. Raines v. Maughan*, 312 Ga. App. 303, 308 (2) (c) (718 SE2d 135) (2011) (physical precedent only) (explaining that expert witness "was allowed to opine that the security measures at the complex were inadequate and deficient"); *Birge v. Dollar Gen. Corp.*, No. 04-2531 BP, 2006 WL 5179319, at *3 (II) (W.D. Tenn. 2006) (excluding proffered expert testimony when witness did not "have any expertise or training that qualifie[d] him to provide expert testimony concerning the deterrent effect of security measures on criminal defendants"); *Bethea v. Bristol Lodge Corp.*, No. CIV.A. 01-612, 2002 WL 31859434, at *5 (II) (A) (E.D. Pa. 2002) (excluding

10

its discretion by determining that Booth was an expert witness who had never been identified as such in violation of the scheduling orders. And based on this misapprehension, the trial court excluded material testimony that cast doubt on the appellees' theories of cheating.[16]

Additionally, pretermitting whether Booth could even be deemed a "surprise" factual witness when he was listed in the pretrial order,[17] if the trial court believed

proffered expert testimony regarding alleged deficiencies in security measures when witness "cite[d] to no industry standard for his opinions on the requisite necessities for adequate security" and did not "provide any explanation that could be tested or subjected to peer review as to how he has reached these opinions"); *Newell v. Best Sec. Sys., Inc.*, 560 So2d 395, 397 (Fla. Dist. Ct. App. 1990) (upholding exclusion of expert testimony as to "propriety of security measures taken in light of prior criminal activity in the area" when the opinion was not based upon valid underlying data).

[16] *See Ga. Bldg. Servs., Inc. v. Perry*, 193 Ga. App. 288, 290 (1) (a) (387 SE2d 898) (1989) (holding that trial court erred in excluding material testimony when court misapprehended party's awareness of witness).

[17] *See id.* (holding that trial court abused its discretion by excluding the testimony of a witness who was listed as a "may call" witness in pretrial order because appellees "could no longer claim they were surprised by appellants' decision to call" the witness); *see also Foster v. Morrison*, 177 Ga. App. 250, 250-51 (2) (339 SE2d 307) (1985) (holding that trial court properly denied motions for continuance and mistrial when counsel was notified of new witnesses within five days of trial as specified by pretrial order); *Kamensky v. Stacey*, 134 Ga. App. 530, 532 (1) (215 SE2d 294) (1975) ("[When] the complaining party cannot legitimately claim surprise, either because he knew of the existence of the witness or had equal means of knowing, it is not error to fail to invoke the sanctions of postponement, mistrial, barring the witness, etc."). *Cf. Malley Motors, Inc. v. Davis*, 183 Ga. App. 599, 600

11

that the City failed to properly comply with discovery, the only appropriate remedy was postponement of trial or a mistrial.[18] Indeed, exclusion of *probative* trial evidence is "not an appropriate remedy for curing an alleged discovery omission."[19] Because the trial court's failure to allow Booth's *material* testimony was an abuse of discretion, we are constrained to reverse for a new trial.[20]

2. The City also contends that the trial court erred by submitting the issue of OCGA § 13-6-11 fees to the jury when the appellees failed to provide ante-litem

_____

(1) (359 SE2d 394) (1987) (holding that trial court abused its discretion in permitting the testimony of a witness who was not listed in the pretrial order, and no reason was given for the failure to list the witness).

[18] *See Hunter v. Nissan Motor Co. Ltd. of Japan*, 229 Ga. App. 729, 730 (1) (494 SE2d 751) (1997) ("The only appropriate remedy for [the] alleged failure to update [appellant's] discovery responses or her expert witness' deposition testimony in the case sub judice . . . was postponement of trial or a mistrial.").

[19] *Id.* at 729 (1). *But see Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 480 (6) (491 SE2d 909) (1997) ("Exclusion of a witness is proper only where there has been a deliberate suppression of the witness' name." (punctuation omitted)).

[20] *See Ga. Bldg. Servs.*, 193 Ga. App. at 290 (1) (a) ("We find the failure of the trial court to allow the witness to testify constituted an abuse of discretion requiring reversal and a new trial."); *see also Skating Clubs of Ga., Inc. v. Hayes*, 153 Ga. App. 857, 858 (2) (267 SE2d 285) (1980) ("No matter how competent evidence might be, a new trial will not be granted merely because evidence has been excluded. It must appear that the excluded testimony was material and the substance of what the material evidence is must be called to the attention of the trial court at the time of its exclusion." (punctuation omitted)).

notice pursuant to OCGA § 36-33-5. Specifically, the City argues that the court should have granted its motion for summary judgment on this issue. Because the question of OCGA § 13-6-11 fees will likely reoccur,[21] we address this enumeration of error and hold that the trial court did not err in denying the City's motion for summary judgment when, as a matter of law, the City was not entitled to ante-litem notice.

To begin with, OCGA § 36-33-5 specifies that "[n]o person, firm, or corporation having a claim for money damages against any municipal corporation on account of *injuries to person or property* shall bring any action against the municipal corporation for such injuries, without first giving notice as provided in subsection (b) of this Code section."[22] And OCGA § 13-6-11 provides that, although "[t]he expenses of litigation generally shall not be allowed as a part of the damages," when "the plaintiff has specially pleaded and has made prayer therefor and [when] the defendant

---

[21] *See Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 836 (4) (446 SE2d 186) (1994) ("[When] the verdict is reversed [and] the case is remanded for new trial . . ., [i]f the denial of summary judgment is enumerated as error, OCGA § 5-6-34 (d) requires us to address that enumeration if it will affect the proceedings below." (emphasis omitted)).

[22] OCGA § 36-33-5 (a) (emphasis supplied).

13

has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."[23]

The City argues that because the appellees failed to provide ante-litem notice as required by OCGA § 36-33-5, they should be barred from recovering OCGA § 13-6-11 fees. In support of this argument, the City relies upon this Court's decision in *Dover v. City of Jackson*.[24] But this Court recently overruled the relevant holding in that case, determining that *Dover* "improperly concluded" that ante-litem notice was required for OCGA § 13-6-11 claims.[25] Indeed, this Court has now held that, consistent with the plain language of OCGA § 36-33-5,[26] a plaintiff is not required to give ante-litem notice on a claim for attorney fees and costs pursuant to OCGA § 13-6-11.[27] Accordingly, this enumeration of error is without merit, and trial court did

---

[23] OCGA § 13-6-11.

[24] 246 Ga. App. 524 (541 SE2d 92) (2000).

[25] *See Greater Atlanta Homebuilders Ass'n, Inc. v. City of McDonough*, Case No. A12A0225, 2013 WL 3336655, at *2 (1) (Ga. App. July 3, 2013).

[26] *See City of Statesboro v. Dabbs*, 289 Ga. 669, 670 (1) (a) (715 SE2d 73) (2011) ("As is clear from the plain text of this statute, it applies to tort claims regarding personal injury or property damage . . . .").

[27] *See Greater Atlanta Homebuilders Ass'n*, 2013 WL 3336655, at *2. *Cf. Dabbs*, 289 Ga. at 670 (1) (holding that ante-litem notice statute did not apply to claims for violations of the Open Meetings Act); *City of Atlanta v. Benator*, 310 Ga.

14

not err in denying the City's motion for summary judgment and submitting this issue to the jury.

3. The City's final three enumerations of error all focus on the sufficiency of the evidence in the trial below. However, because we have determined that a new trial is necessary, we do not address these remaining enumerations of error.[28]

Accordingly, for all the foregoing reasons, the trial court's judgment is reversed and the case is remanded for a new trial.

*Judgment reversed and case remanded with direction. Andrews, P. J., and McMillian, J., concur.*

---

App. 597, 602 (3) (714 SE2d 109) (2011) (holding that ante-litem notice statute did not apply to claims for unjust enrichment, money had and received, and breach of city code "because they are not claims for injury to person or property"); *Neely v. City of Riverdale*, 298 Ga. App. 884, 886 (1) (681 SE2d 677) (2009) ("[T]he ante litem notice requirement of OCGA § 36-33-5 is not applicable to suits for breach of contract.").

[28] *See King v. Baker*, 109 Ga. App. 235, 238 (14) (136 SE2d 8) (1964) (physical precedent only) ("In view of the fact that this case is being reversed and the evidence may be different and the verdict of the jury may be different upon another trial of the case, it is not necessary to determine whether the evidence presents sufficient data upon which the jury could have based the verdict for special damages, or whether there was sufficient evidence to sustain the verdict for the amount of general damages found, or whether the amount of punitive damages was excessive."); *Atlantic Coast Line R.R. Co. v. Clinard*, 93 Ga. App. 64, 66 (6) (90 SE2d 923) (1955) ("Since the case is to be reversed on special grounds, we will not pass upon the general grounds, since, if the case is tried again, the evidence may be different.").

15