301 Ga. 589
FINAL COPY

S16G1214. RESURGENS, P.C. et al. v. ELLIOTT.

HUNSTEIN, Justice.

In 2011, Appellee Sean Elliott filed a medical malpractice lawsuit against Appellants Resurgens and Dr. Tapan Daftari in the State Court of Fulton County. Elliott alleged that Dr. Daftari failed to timely diagnose and treat an abscess in his thoracic spinal cord, which resulted in his paralysis. The parties engaged in pretrial discovery, and, during trial four years later, Elliott attempted to call Savannah Sullivan, a nurse who was not specifically identified as a potential witness in either Elliott's written discovery responses or in the parties' pre-trial order ("PTO"). The trial court subsequently excluded Sullivan as a witness. After the jury returned a defense verdict, Elliott appealed to the Court of Appeals, arguing that the trial court's exclusion of Sullivan was error. The Court of Appeals agreed, reversing the jury's judgment and remanding for a new trial. See Elliott v. Resurgens, P.C., 336 Ga. App. 217 (782 SE2d 867) (2016).

We granted certiorari to decide whether the Court of Appeals erred in reversing the trial court's decision to exclude Sullivan as a sanction for the plaintiff's failure to identify her in pre-trial discovery proceedings. For the reasons that follow, we conclude that the Court of Appeals' decision was in error, and we therefore reverse the judgment below.

1.    *Factual and Procedural Background*

(a) *Pre-trial Proceedings*

As recounted by the Court of Appeals, Elliott began seeing Dr. Daftari in 2004 to receive medical treatment for neck and back pain. In December 2009, Dr. Daftari diagnosed Elliott with degenerative disc disease and subsequently performed posterior cervical spine surgery to repair the issue. Approximately two weeks after the surgery, Elliott experienced many complications leading to another hospitalization and eventual back surgery on December 21, 2009. Despite this, Elliott was unable to recover neurologic function, and he became paralyzed from the waist down. See Elliott, 336 Ga. App. at 217-218.

Elliott filed his complaint in 2011, alleging medical malpractice. In support of his claims, Elliott attached expert affidavits to his amended complaint

2

stating that, at 9:00 a.m. prior to Elliott's December 21 surgery, Dr. Daftari was aware that Elliott was unable to move his legs and that, despite knowing of the patient's change in medical status, he did not act quickly enough to respond to the same. [1]

After answering the complaint, Dr. Daftari served Elliott with interrogatories requesting that he identify defendants' alleged acts of negligence and list potential witnesses. In response to the request for information regarding acts of negligence, Elliott pointed to the "testimony and expertise of the experts who have reviewed my medical records" and referred defendants to the expert affidavits attached to the complaint. Concerning the witness interrogatories, Elliott's responses were as follows:

> 21. <u>Witnesses to alleged acts/omissions</u>
> As to each and every allegation of negligence against the Defendants, whether made in your Complaint, or in the subsequently filed expert affidavits, or in your response to the preceding Interrogatory, please identify by name and address all persons known to you who have or claim to have knowledge, information or an opinion in any way relevant to or regarding that

---

[1] Within Elliott's medical records is a nursing note authored by his listed care provider, registered nurse Christine Adams, which stated that at 9:00 a.m. on December 21, 2009, "Dr. Daftari at [bedside], aware of [patient] unable to move bilateral lower extremities. Orders noted." Neither party offered testimony or evidence from Christine Adams at trial.

act or omission, and specify the knowledge, etc., each such witness possesses.

RESPONSE: I object to this interrogatory in that it seeks legal conclusions, mental impressions, protected work product and information protected by the attorney client privilege, and it seeks to impose obligations on me greater than required by the Georgia Civil Practice Act. Subject to this objection and without waiving the same, *I direct defendants to review my complaint along with attached affidavits, as well as the medical records I provided to defendants' counsel and the records defendants kept throughout my care.* As discovery is ongoing, I will supplement my response should more information become available.

. . .

31. Witnesses
Please state the name, present address and telephone number of all persons not identified elsewhere in the answers to these Interrogatories who are known or believed by you to have any knowledge or information which is relevant, directly or indirectly, to the claims asserted in your Complaint.

RESPONSE: I object to this interrogatory in that it seeks legal conclusions, mental impressions, protected work product and information protected by the attorney client privilege, and it seeks to impose obligations on me greater than required by the Georgia Civil Practice Act. As discovery is ongoing, I will supplement my response should more information become available.

(Emphasis supplied.)

During the discovery process, Elliott supplemented his discovery responses, but did not disclose Sullivan as a potential witness or person with

knowledge. Neither Resurgens nor Dr. Daftari filed a motion to compel pursuant to OCGA § 9-11-37 or sent Elliott a letter pursuant to Uniform Superior Court Rule 6.4 requesting clarification of his discovery responses.

On June 6, 2014, the parties submitted a PTO to the trial court wherein Elliott identified his "may call" witnesses as: "Plaintiff's treating medical providers," "any person named in the medical records," and "any healthcare professional whose name appears in Plaintiff's records identified [herein]"; he further reserved "the right to call other witnesses for the purposes of impeachment or rebuttal." Sullivan's name, though noted twice in the voluminous medical records produced during discovery, was not listed as a potential witness in the PTO nor was she identified in his March 2015 notice of witnesses subpoenaed for trial. Leading up to trial, the parties also had informal discussions regarding potential trial witnesses via e-mail; Sullivan was not identified in any of these communications.

(b) *Trial*

On the second day of trial, during Elliott's case-in-chief, counsel called Dr. Daftari to the stand for the purposes of cross-examination; he asked one

5

question — whether Dr. Daftari was at Elliott's bedside at 9:00 a.m. on December 21, 2009. Dr. Daftari stated that he was not.[2] Thereafter, Elliott called Sullivan as his next witness. Defense counsel objected, arguing that Sullivan was intentionally omitted from the PTO and that Elliott likewise never identified her during discovery despite their interrogatory requests for witnesses with knowledge. Elliott argued that this witness was generally identified in the "catch all" categories of the PTO, as she was a "treating medical provider," a "person named in the medical records," and was an impeachment witness. After hearing arguments from the parties, the trial court excluded Sullivan as a witness "because she was not identified during the extensive discovery that has been allowed in this case."

The next day, Elliott produced to the trial court the two pages in the medical records wherein Sullivan's name appeared. Neither page showed that Sullivan provided any medical care to the patient or that she was at Elliott's bedside with Dr. Daftari at 9:00 a.m. on December 21, 2009. Elliott renewed his request to call Sullivan as a witness and allow her to testify for the purposes of

_____

[2] The defense also presented records from another surgery showing that Dr. Daftari was in the operating room from 8:09 a.m. to 11:03 a.m. on December 21, 2009.

6

impeachment and because her name appeared in the medical records. Defense counsel objected again, arguing that, despite knowing Sullivan was a material witness prior to trial, Elliott failed to disclose her in either supplemental discovery or in the PTO; he further averred that, though Sullivan's name was listed in two places in the medical records, nothing in those pages put them on notice that she had knowledge relevant to the claims and was, therefore, a potential witness to be investigated.

The court affirmed its prior ruling, finding as follows:

> I have, in considering this motion for reconsideration, considered very carefully [Plaintiff's counsel], the argument that you made and your argument about manifest injustice, which goes to us all having a level playing field, which is what the ultimate goal of this court is, is to make sure we do have a level playing field.
> I have also heard [defense counsel's] argument about the burden his client would face having to deal with trial by ambush, I think is the phrase he used. *What I find is that at some point prior to these trial proceedings starting this week, the plaintiff did make a decision to call or to attempt to call . . . Savannah Sullivan. And this witness was not named either in the interrogatories — the interrogatory responses, the Plaintiff's supplementation of the interrogatory responses and that there has been no identification of her in the Pretrial Order.* I am going to stand by my earlier ruling. *So as to allow for a trial to proceed without surprise, without ambush* and as I say, I stand by my ruling to exclude the proposed witness. So, I have carefully considered, as I say, the arguments of

both counsel, the citations to the case law that [defense counsel] presented, plus additional precedent.

I believe this is in my discretion and, again, my goal here is so that there is not an unfair burden of surprise where *there has been absolutely no disclosure of this witness at any time, even in the hours leading up to the days leading up to trial.* So, that's my ruling.

(Emphasis supplied.)

The trial court also denied Elliott's request to call Sullivan as a rebuttal witness after the defense rested their case-in-chief, finding that "based on the fact that at some point Plaintiff — at some point in advance of these trial proceedings starting, the Plaintiff had made a decision to call that witness." In support of this finding, the trial court reiterated that "[t]here was no amendment made to either the Pretrial Order or supplementation to the discovery," identifying Sullivan as a witness or person with knowledge.

(c)    *Court of Appeals Opinion*

After the jury returned a defense verdict, Elliott filed a direct appeal to the Court of Appeals.[3]  In concluding that the trial court abused its discretion by precluding Sullivan from testifying, the Court of Appeals held in pertinent part:

---

[3] Neither party filed a motion for new trial.

8

Elliott is indeed correct that, in Georgia, "[e]xclusion of *probative* trial evidence is not an appropriate remedy for curing an alleged discovery omission." In fact, this is true even when there is no excuse for a party's failure to "faithfully engage in discovery in compliance with [an] extended discovery deadline." Instead, if the trial court believed that Elliott failed to properly comply with discovery, "the only appropriate remedy was postponement of trial or a mistrial." As we have previously explained,

> *[when] objection was made to the testimony of certain previously undisclosed witnesses, the proper procedure when they were called to testify was not to object to their testifying or to the admission of their testimony, but to move for a postponement of the trial for a sufficient length of time to enable the defendant to interview them, check the facts to which they would testify, and, if indicated, arrange to secure rebuttal evidence or to impeach them.*

Here, when Elliott called Sullivan to testify, the defendants did not move to postpone the trial or for a mistrial, but instead sought exclusion of her testimony because she had not previously been disclosed as a potential witness. In response to the defendants' concerns, Elliott suggested, as a curative measure, that the trial court allow the defendants to depose or question Sullivan before she testified. But the court declined to do so, noting that there was an agreed upon trial schedule, that there had already been significant setbacks in the proceedings, and that the court was working hard to keep the trial "on track." In light of the binding precedent set forth supra, the trial court abused its discretion in excluding Sullivan's probative and material testimony because doing so was not an appropriate remedy for Elliott's alleged failure to properly comply with discovery.

(Citations and footnotes omitted; emphasis supplied.) *Elliott*, 336 Ga. App. at 221-222. We granted the petition for certiorari to review that holding and now reverse the decision of the Court of Appeals.

2.    *Analysis*

On appeal, Resurgens contends that the Court of Appeals erred in reversing the trial court for three reasons: (a) the Court of Appeals' conclusion that OCGA § 9-11-37 (d) ("Rule 37 (d)") sanctions were not an available remedy for the defendants was erroneous as Elliott deliberately misled the defendants in his interrogatory responses and thereby concealed the identity of a known material witness; (b) the trial court properly exercised its discretion in precluding Sullivan from testifying pursuant to its authority under OCGA § 9-11-37 (d); and, (c) because the Court of Appeals wrongly concluded that the trial court did not exclude Sullivan's testimony on the independent basis that she was not specifically identified in the PTO. We agree with Resurgens that the Court of Appeals' legal analysis was erroneous on the first two points.[4]

(a)    *Rule 37 (d) Sanctions for False or Misleading Discovery Responses*

---

[4] As discussed in subsection (c), infra, we agree with the Court of Appeals that the PTO was not an independent basis for excluding Sullivan's testimony.

10

First, Resurgens contends that the Court of Appeals failed to apply the proper legal analysis for a trial court's imposition of sanctions pursuant to Rule 37 (d), otherwise known as shortcut sanctions, to this case. Specifically, Resurgens alleges that this case falls under the provisions and case law allowing for Rule 37 (d) sanctions where a party provides false or deliberately misleading responses to written discovery requests, thus providing a remedy more than a mere continuance. We agree.

It is well established that, where a party receives an evasive or incomplete answer to a discovery request, in order to obtain an answer upon which it can rely, or sanctions for failing to produce the same, the party must "file a motion to compel, obtain an order from the court compelling an answer, and then seek sanctions if the responding party still refuses to comply." Ford Motor Co. v. Conley, 294 Ga. 530, 545 (757 SE2d 20) (2014); see also OCGA § 9-11-37; Strejc v. MARTA, 197 Ga. App. 88, 89 (397 SE2d 501) (1990); Mayer v. Interstate Fire Ins. Co., 243 Ga. 436, 440 n. 1 (254 SE2d 825) (1979) (explaining why an evasive discovery response does not authorize Rule 37 (d) sanctions). In instances where a "surprise" occurs at trial because of a party's

failure to seek more information regarding an evasive or incomplete discovery response, then a continuance of the trial to allow the party to obtain more information is the proper remedy. This is because the onus to seek clarification of an evasive or incomplete answer rests with the requestor.

Conversely, when a party provides a false or deliberately misleading discovery response, including by deliberately concealing the name of a material witness, other remedies are available to the aggrieved party. When a party receives a substantive answer to a discovery request, they are entitled to believe that answer, and they are not required to file a motion to compel or seek clarification of that substantive response in order to obtain sanctions should they later learn that the answer provided was false or intentionally misleading. See Conley, 294 Ga. at 544; OCGA § 9-11-37 (d) (1) (allowing a trial court to "take any action authorized under subparagraphs (b) (2) (A) through (b) (2) (C) of this Code section" where a party has failed to respond to interrogatories); MARTA v. Doe, 292 Ga. App. 532, 535 (664 SE2d 893) (2008). This is because an intentionally false response to a written discovery request, particularly when it concerns a pivotal issue in the litigation, equates to a total failure to respond,

triggering OCGA § 9-11-37 (d) sanctions.[5]  MARTA v. Doe, 292 Ga. App. at

537.

The reasoning for allowing such a harsh penalty was best explained by our

Court of Appeals in MARTA v. Doe:

> An interrogatory answer that falsely denies the existence of discoverable information is not exactly equivalent to no response. It is *worse* than no response. When there is no response to an interrogatory or the response is devoid of content, the party serving the interrogatory at least knows that it has not received an answer. It can move the court for an order to compel a response. . . . If the response is false, however, the party serving the interrogatory may never learn that it has not really received the answer to the interrogatory. The obstruction to the discovery process is much graver when a party denies having had a prior accident than when the party refuses to respond to an interrogatory asking if there have been any prior accidents.

> . . .

> A litigant will not be heard to contend that its own conduct has removed it beyond the reach of sanctions, when it has frustrated the orderly process prescribed in OCGA § 9-11-37 by false or erroneous responses to interrogatories. To condone such conduct would force parties to assume the falsity of every sworn interrogatory response and file endless motions preserving their right to relief. Such a rule would allow the unscrupulous to conceal

---

[5] In such instances, all that is required prior to the imposition of Rule 37 (d) sanctions is a request for sanctions, notice to the parties, and a motion hearing to determine if the offending party's actions were deliberate.  See Howard v. Alegria, 321 Ga. App. 178, 189 (4) (c) (739 SE2d 95) (2013).  All of this occurred in this case.

13

documents from opposing parties by the simple expedient of denying their existence, without fear of penalty if the deception were by some chance discovered. It would discourage diligence in seeking out relevant documents even on the part of those not actively dishonest. Lack of diligence or negligence would not only be unpunished, it would be rewarded.

(Citations omitted; emphasis in original.) Id. at 536-537.[6] Accordingly, where a party has provided false or intentionally misleading responses to written discovery, including deliberately suppressing the name of a material witness, the aggrieved party may seek sanctions for the same, as allowing such hidden evidence to be admitted at trial simply because it has some probative value rewards and encourages deceptive behavior.

Here, we are confronted, not by an evasive discovery response, but by the deliberate suppression of the name of a material witness. Yet, instead of applying the legal analysis associated with providing a false or intentionally misleading discovery response, it appears that our Court of Appeals applied the

---

[6] This proposition has not only been reaffirmed by our Court of Appeals, see Resource Life Ins. Co. v. Buckner, 304 Ga. App. 719 (4) (b) (698 SE2d 19) (2010); Howard, 321 Ga. App. at 189 (4) (c), but it has also been adopted by this Court, see Conley, 294 Ga. at 530, and was further conceded to by Elliott at oral argument.

14

standard for a party providing an evasive or incomplete answer.[7] This legal analysis was in error as both our case law and statutory authority give the aggrieved party in such a circumstance more options for relief than a mere continuance; instead, a trial court clearly has the discretion to impose Rule 37 (d) sanctions if it finds that the offending party has provided discovery responses which were false or deliberately misleading.

Therefore, to the extent our Court of Appeals held that the only appropriate remedy available to a party seeking relief after receiving false or intentionally misleading interrogatory responses, such as where a witness' name

---

[7] In fact, a review of the cases relied upon by the Court of Appeals in support of its conclusion that the exclusion of probative evidence at trial is never an appropriate remedy for a discovery omission shows that many of the cases cited did not involve findings by the trial court that a party intentionally concealed the name of a witness or gave false or misleading answers in response to a discovery request. See City of Atlanta v. Bennett, 322 Ga. App. 726 (746 SE2d 198) (2013) (exclusion of witness improper where fact witness previously disclosed prior to trial in pre-trial order); Hunter v. Nissan Motor Co. of Japan, 229 Ga. App. 729 (494 SE2d 751) (1997) (trial court's instruction to disregard key portions of expert testimony inappropriate sanction for plaintiff's failure to update her discovery responses where defendants previously deposed plaintiff's expert and, after providing additional information in discovery, failed to request supplementation or to depose expert on newly produced information); Hart v. Northside Hosp., Inc., 291 Ga. App. 208 (661 SE2d 576) (2008) (discovery omission does not provide for exclusion of evidence); Thakkar v. St. Ives Country Club, 250 Ga. App. 893 (553 SE2d 181) (2001) (trial court's allowance of lay and expert witness testimony proper where witnesses were disclosed prior to trial and no evidence of deliberate concealment).

15

has been deliberately suppressed, is to postpone a trial or declare a mistrial, such a holding is error. We further disapprove of any cases that stand for this proposition.

(b) *Abuse of Discretion*

We must next determine whether the trial court abused its discretion by imposing Rule 37 (d) sanctions in this case. We conclude it did not. "A trial court has broad discretion to control discovery, including the imposition of sanctions," Smith v. Glass, 273 Ga. App. 327, 328 (615 SE2d 172) (2005), and this Court "will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion." (Citation and punctuation omitted.) Ford Motor Co. v. Gibson, 283 Ga. 398, 401 (659 SE2d 346) (2008). See also Deep South Constr., Inc. v. Slack, 248 Ga. App. 183, 187 (546 SE2d 302) (2001) ("A trial court's finding that a party has wilfully failed to comply with its discovery obligations[8] will not be reversed if there is any evidence to support it."(citation

---

[8] One such obligation is the supplementation of written discovery responses. OCGA § 9-11-26 (e) states:

(e) **Supplementation of responses.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonally to supplement his response

16

and punctuation omitted.). That is because, unlike the appellate courts, "the trial court directly supervised the ebb and flow of the discovery and trial process in [the] case and had the opportunity to observe and assess the conduct, demeanor, and credibility of the parties and their counsel throughout the proceedings." Conley, 294 Ga. at 547.

Here, the trial court did not abuse its broad discretion. Initially, in precluding Sullivan's testimony, the court found that she had not been identified in the parties' extensive discovery. Later, the trial court further explained its reasoning for imposing this sanction, finding that: Elliott had made the decision

---

with respect to any question directly addressed to:
    (A) *The identity and location of persons having knowledge of discoverable matters*; and
    (B) The identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which:
    (A) He knows that the response was incorrect when made; or
    (B) *He knows that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.*
                      . . .
(Emphasis supplied.)

to call Sullivan as a witness in the time leading up to trial; despite this decision, he did not name this witness in his original or supplemental interrogatory responses nor did he identify Sullivan in the PTO; there had been "absolutely no disclosure of this witness at any time"; and it desired the trial proceed "without ambush."[9] This clearly constitutes a finding by the trial court that Elliott deliberately concealed the name of a known material witness prior to trial, despite the defendants' discovery requests[10] for persons with knowledge

---

[9] According to Webster's Third New International Dictionary (1966) ambush means "a hidden or concealed position," "a person occupying a concealed position," or "the act of lying in wait in or of attacking by surprise from a concealed position." Id. at 67.

[10] In support of his argument that this was not a deliberate act, Elliott points to the two pages within the medical records where Sullivan's name appears, arguing that this places her into the "catch all" provisions of the PTO for persons identified in the medical records and a treating medical physician. The trial court rejected this argument, noting that the calling of this witness equated to an ambush of the defense. Indeed, the record shows that, while Sullivan's name, along with two other nurses, appears on two pages (out of thousands of pages of medical discovery), there is nothing in the record showing that the notations on those two pages placed Resurgens on notice that Sullivan was a potential person with knowledge of the alleged negligence, let alone with specific knowledge contradicting the main defense at trial – i.e., that she was present at Elliott's bedside with Dr. Daftari at 9:00 a.m. on December 21. Significantly, the nursing note Elliott relied on in support of his position was written by Christine Adams, who was noted to be his care provider at that time; Sullivan's name does not appear on that page.

Even more concerning was counsel's admission at oral argument that he was aware at least three months prior to trial that Sullivan was a potential material witness who could contradict the testimony of Dr. Daftari and bolster Elliott's case. Still,

of the negligence alleged.

The record supports the trial court's decision to impose Rule 37 (d) sanctions by excluding Sullivan as a witness, and such exclusion is allowed where, as here, there has been a deliberate suppression of a material witness. See Brewer v. Brewer, 249 Ga. 517, 518 (3) (291 SE2d 696) (1982); OCGA § 9-11-37 (b) (2) (B) (authorizing the trial court to prohibit the offending party "from introducing designated matters in evidence"). For these reasons, we reverse the decision of the Court of Appeals and affirm the trial court's ruling excluding Sullivan as a witness at trial pursuant to OCGA § 9-11-37 (d).

(c)    *Pre-Trial Order*

Finally, Resurgens contends that the Court of Appeals wrongly concluded that the trial court's exclusion of Sullivan's testimony was not based upon an

despite all of this, Elliott did not identify such an important witness in either supplemental discovery responses, the PTO, or even in his informal e-mail discussions with counsel prior to trial. We caution the bench and bar against relying on such "catch all" categories in this manner; candor and cooperation, as opposed to "gotcha" moments and gamesmanship, should be encouraged between litigating parties. See Int'l. Harvester Co. v. Cunningham, 245 Ga. App. 736, 738 (538 SE2d 82) (2000) ("The goal of discovery is the fair resolution of legal disputes, to remove the potential for secrecy and hiding of material." (citation and punctuation omitted)); OCGA § 9-11-1 (the Civil Practice Act "shall be construed to secure the just, speedy, and inexpensive determination of every action").

independent finding that Elliott failed to identify Sullivan in the PTO. However, our review of the trial court's many verbal rulings and findings on this issue leads us to the same conclusion — that counsel's failure to identify Sullivan as a witness in the PTO was part and parcel of the trial court's finding that Elliott deliberately concealed the name of a known witness in discovery prior to trial, and was not an independent reason for granting sanctions in the case. Therefore, we do not address the PTO issue raised by Resurgens.

Judgment reversed. All the Justices concur.

Decided May 30, 2017 – Reconsideration denied June 30, 2017.

Certiorari to the Court of Appeals of Georgia — 336 Ga. App. 217.

Weathington Smith, Paul E. Weathington, Tracy M. Baker, David C. Hanson; Hall Booth Smith, Mark W. Wortham, Nathan A. Gaffney, for appellants.

M. Andrew Clark; Eric J. Hertz, for appellee.

Donald J. Palmisano, Jr.; Bouhan Falligant, Carlton E. Joyce, D. Jay Thaw, Jr., amici curiae.