**THIRD DIVISION**
**DILLARD, C. J.,**
**REESE AND BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2018**

# In the Court of Appeals of Georgia

A16A1405. ANGLIN et al. v. SMITH et al..

BETHEL, Judge.

In *Anglin v. Smith*, Case No. A16A1405 (October 12, 2016), this Court granted Mittie Anglin and her husband a new trial in their medical malpractice action against Dr. Stephanie Smith and Gwinnett Anesthesia Service, P.C. (GAS). This Court determined that, regardless of whether the plaintiffs' counsel had a duty to disclose a certain affidavit to the defense as part of pre-trial discovery, when the plaintiffs attempted to utilize the affidavit in the course of trial, the trial court erred by excluding the affidavit. *Anglin*, at 2.

Following this Court's denial of their motion for reconsideration, Dr. Smith and GAS petitioned the Georgia Supreme Court for a writ of certiorari. That petition was granted, and the Supreme Court vacated this Court's judgment and remanded the

case to this Court for reconsideration in light of the Supreme Court's decision in *Resurgens, P.C. v. Elliott*, 301 Ga. 589 (800 SE2d 580) (2017).[1]

In *Elliott*, a malpractice action, the plaintiff attempted to call a witness who had not been specifically identified as a potential witness in the plaintiff's discovery responses or in the pre-trial order. *Elliott*, 301 Ga. at 589. The trial court later excluded the witness from testifying. *Id*. This Court ruled that the trial court's exclusion of the witness was in error and granted the plaintiff a new trial. *Id*. *See also Elliott v. Resurgens, P.C.*, 336 Ga. App. 217 (782 SE2d 867) (2016). However, the Supreme Court reversed this Court's decision granting the plaintiff a new trial, finding that the trial court had not abused its discretion under the discovery rules by excluding the witness. *Elliott*, 301 Ga. at 597-99 (2) (b).

In light of *Elliott*, we now turn to a reconsideration of the issues originally raised on appeal by the appellants: whether the plaintiffs had a pre-trial duty to disclose the affidavit they attempted to use to question a witness in the case and, if so, whether the trial court erred by barring the plaintiffs from using the affidavit at trial to refresh the witness's recollection. For the reasons set forth below, we affirm the trial court's exclusion of the affidavit.

---

[1] *See Smith v. Anglin*, Case No. S17C0564 (June 30, 2017).

1. *Relevant Factual Background.*[2]

Construed in favor of the jury's verdict,[3] the evidence shows that in 2010 Anglin's orthopedist referred Anglin to anesthesiologist Stephanie Smith for a series of lower back injections to treat pain. Smith performed the second injection on May 12, 2010, although she stopped the procedure midway when Anglin complained of pain shooting down her leg. Anglin left Smith's clinic following the procedure. Anglin contends that after the second injection, she suffered weakness and pain in her lower extremities, such that she was unable to stand, as well as urinary incontinence.

The precise time at which Smith learned of Anglin's problems following the second injection was a key issue at the 2015 trial. Smith testified that she assessed Anglin after the epidural procedure and noted no problems with walking. Other staff at Smith's clinic also testified that Anglin would not have been discharged had she been unable to walk. On May 14, two days after the procedure, Smith received a

---

[2] Because this Court's original opinion in this case was not designated for official reporting, we have restated in full this Court's summary of relevant facts that appeared in the original opinion.

[3] *See R.O.C. v. Estate of Bryant*, 279 Ga. App. 652, 653 (1) (632 SE2d 429) (2006) ("Where a jury returns a verdict . . . the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict."(citation omitted)).

3

telephone message that Anglin's legs were "hardly working at all." Smith testified that when she returned the phone call, Anglin said she was having spasms and needed more pain medication but had no problems with her bowel or bladder function and was able to walk. According to Smith, Anglin declined to come see her in the office or go to the emergency room. Smith prescribed medication and said she told Anglin to go to the emergency room if she did not improve and could not reach Smith or the doctor on call. Smith said Anglin did not call her to report problems again.

At trial, Anglin told a different version of this conversation, testifying that she told Smith that her legs were "jerky" and "wouldn't work" but Smith did not ask her to come into the office or direct her to the emergency room; she said she couldn't remember if Smith asked her about urinary issues. The plaintiffs' expert testified that, assuming Anglin had told Smith in that conversation that she could not walk due to leg weakness, was in pain, and was experiencing urinary incontinence, Smith should have directed Anglin to come to her office or go to the emergency room for an MRI. Smith herself testified that she would have sent Anglin directly to the ER if Anglin said she could not stand up and walk.

On May 18, Anglin visited another doctor who spoke with an orthopedic surgeon and advised her to go straight to an emergency room to meet with him.

4

Anglin received surgery that same day but continued to experience difficulties through the time of trial. Claiming Smith violated the standard of care by not properly assessing her after the second injection or investigating further after their post-injection phone conversation, Anglin sued Smith and her employer, GAS.

The sole focus of this appeal is the trial testimony of Robert Gadlage, a physician who employed Anglin at the time of the injections. In particular, the appeal concerns the trial judge's limitation of Gadlage's testimony based on the plaintiffs' responses to discovery. Before trial, the defendants served the plaintiffs with several interrogatories, including a general request for names and addresses of all witnesses. Gadlage was identified in response to that interrogatory. The defendants also posed a rather inartfully worded interrogatory:

> Please indicate whether any doctor, nurse or other individual, with or without medical training, has ever expressed to you in your presence, or to your knowledge has ever expressed to or in the presence of some other person, any opinion that these Defendants were negligent, acted inappropriately or otherwise caused or was at fault, or that you contend could be construed in any way to support the allegations of your Complaint. Please indicate in reasonable detail when and where such statement was made, what was said and who was present.

The plaintiffs responded to this by referring to their response to the more general interrogatory seeking the identity of all witnesses. A document request included in the same set of defense discovery requests sought production of any documents "referred to in your answers to interrogatories." The plaintiffs responded that they had "none at this time," while reserving their "right" to supplement their response.

On August 15, 2012, sometime after the plaintiffs responded to these discovery requests, Gadlage executed an affidavit notarized by the plaintiffs' counsel.[4] In the affidavit, Gadlage recounted a phone conversation that he had with Smith, which he said took place between the date of Anglin's second injection and the date of her back surgery, most likely on May 14, 2010. In that conversation, according to Gadlage's affidavit, Smith indicated Anglin was experiencing "unrelenting pain and inability to walk" as a result of the procedure performed by Smith. A year later, Gadlage was listed as a possible trial witness for the plaintiffs in the pre-trial order. The defendants did not take Gadlage's deposition.

---

[4] It is not clear from the record precisely when the plaintiffs provided their discovery response, but the parties' discussion of the matter at trial presumes that it was before Gadlage provided his affidavit. The plaintiffs' initial brief in this case says the defense requests and plaintiffs' responses were served "in the summer of 2012."

The plaintiffs called Gadlage to testify at the 2015 trial. The plaintiffs' counsel asked Gadlage about the phone call Gadlage said he received from Smith. Gadlage testified that the two discussed Anglin experiencing side effects from the epidural procedure. Asked what those side effects were, Gadlage testified, "it would more than likely have been pain." He said he could not remember exactly what the other side effects discussed were, adding, "[i]t might have been weakness or something else." When Gadlage said that he could not recall Smith mentioning an inability to walk or urinary incontinence, plaintiffs' counsel said he would show Gadlage an affidavit that Gadlage had executed for plaintiffs' counsel previously.

Defense counsel asked to see a copy of the affidavit. When plaintiffs' counsel confirmed that the defense had not been provided a copy previously, defense counsel called for a bench conference. The plaintiffs' counsel read the pertinent part of the affidavit into the record. Defense counsel objected to the use of the affidavit on the ground that it had not been produced or even identified in discovery. He also complained that plaintiffs' counsel had led him to believe that Gadlage would serve as a sort of character witness for Anglin and instead was seeking the doctor's testimony on matters related to negligence. The plaintiffs' counsel replied that the information he had provided about Gadlage had been "accurate," albeit "not

7

complete," and argued that the affidavit was work product that he did not have a duty to disclose.

The trial court ruled that the affidavit could not come into evidence or be used to refresh Gadlage's recollection, because the plaintiffs should have disclosed the existence of the affidavit and given the court an opportunity to evaluate their work product argument. The trial court said the plaintiffs should have supplemented their discovery responses under OCGA § 9-11-26 (e) (2) (B), which requires supplementation when a response "is no longer true and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment." The trial court added that its ruling did not prevent plaintiffs' counsel, while in questioning Gadlage, from referring to the contents of any prior conversation counsel might have had with Gadlage.

When Gadlage retook the stand, he testified that "the thing that I remember specifically [about his conversation with Smith] is that it was about pain and, you know, other things that went on, inability to walk, other things like – it probably was." But when plaintiffs' counsel asked Gadlage whether he recalled telling counsel that Anglin's inability to walk came up in his conversation with Smith, Gadlage replied, "I can't look you in the eye and say I remember saying anything about that."

8

Asked again whether he recalled telling plaintiffs' counsel that Smith had told him Anglin was unable to walk, Gadlage replied, "I can't give a definite answer to that." After the jury returned a defense verdict, the plaintiffs appealed on the sole basis that the trial court had erred in handling the issue of Gadlage's affidavit.

2. *Plaintiffs' Duty to Disclose the Gadlage Affidavit*.

OCGA § 9-11-26 (e) (2) (B) provides, in relevant part that

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows . . . He knows that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

As our Supreme Court has emphasized,

[a] trial court has broad discretion to control discovery, including the imposition of sanctions, and this Court will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion. That is, because unlike the appellate courts, the trial court directly supervised the ebb and flow of the discovery and trial process in the case and had the opportunity to observe and assess the conduct, demeanor, and credibility of the parties and their counsel throughout the proceedings.

*Elliott*, 301 Ga. at 597-98 (2) (b) (citations and punctuation omitted).

9

Applying this highly deferential standard, we find no abuse of discretion in the trial court's determination that the existence of Gadlage's affidavit should have been disclosed to the defense even though the affidavit was given after the plaintiffs' initial responses to the defendants' interrogatories. Although the wording of the defendants' interrogatory triggering this duty was by no means a model of clarity, the interrogatory called upon the plaintiffs to identify

> any doctor . . . [who] has ever expressed . . . any opinion that these Defendants were negligent, acted inappropriately, or otherwise caused or was at fault, *or that you contend could be construed in any way to support the allegations of your Complaint*. Please indicate in reasonable detail when and where such statement was made, what was said, and who was present.

Although the statements in Gadlage's affidavit do not provide an opinion as to whether Smith and GAS were negligent in their care of Anglin, the plaintiffs' counsel clearly intended to use Gadlage's affidavit at trial to support the allegation that Smith was aware of the pain and other difficulties Anglin was experiencing two days following the second injection. This was among the key allegations in the case, as the plaintiffs argued that Smith's failure to investigate and properly assess Anglin's condition, though Smith was aware that she was experiencing difficulties, breached

10

the applicable standard of medical care. In light of these factors, we find no abuse of the trial court's discretion in determining that the plaintiffs were under a duty to supplement their interrogatory responses and disclose to the defense that Dr. Gadlage had provided an affidavit.[5]

3. *Remedies for Failure to Disclose the Affidavit's Existence.*

As our Supreme Court discussed in *Elliott*,

> [w]hen a party receives a substantive answer to a discovery request, they are entitled to believe that answer, and they are not required to file a motion to compel or seek clarification of that substantive response in order to obtain sanctions should they later learn that the answer provided was false or intentionally misleading. This is because an intentionally false response to a written discovery request, particularly when it concerns a pivotal issue in the litigation, equates to a total failure to respond, triggering OCGA § 9-11-37 (d) sanctions.

*Elliott*, 301 Ga. at 595-96 (2) (a) (citations omitted).

---

[5] We do not reach the question of whether the Gadlage affidavit constituted attorney work product or whether its contents could have been withheld from the defense on that basis. In this case, because the Gadlage affidavit was responsive to the defense's interrogatories, the plaintiffs were under a duty to disclose the existence of the affidavit and could have lodged any claims of privilege when they supplemented their interrogatories. Their failure to do so, as the trial court rightly determined, barred the plaintiffs from raising the work-product claim when they attempted to utilize the affidavit during Dr. Gadlage's trial testimony.

Here, the record supports the trial court's determination that the plaintiffs'

failure to disclose the Gadlage affidavit to the defense was deliberate and that, in the

absence of supplemental disclosure, their response to the interrogatories was false and

misleading. Plaintiffs' counsel indicated to the trial court that he "did not feel an

obligation to disclose to [defense counsel] my work-product information" and went

so far as to note that he was "entitled under the rules to knowingly conceal my work

product." These statements by counsel, at a minimum, suggest he was aware the

Gadlage affidavit was responsive to the defendants' interrogatories and that, absent

work-product privilege, the affidavit was subject to production.

As the Supreme Court further noted in *Elliott*,

> An interrogatory answer that falsely denies the existence of discoverable
> information is not exactly equivalent to no response. It is *worse* than no
> response. When there is no response to an interrogatory or the response
> is devoid of content, the party serving the interrogatory at least knows
> that it has not received an answer. It can move the court for an order to
> compel a response . . . If the response is false, however, the party
> serving the interrogatory may never learn that it has not really received
> the answer to the interrogatory.

*Elliott*, 301 Ga. at 596 (2) (a) (quoting *Metro Atlanta Rapid Transit Auth. v. Doe*, 292

Ga. App. 532, 536 (664 SE2d 893) (2008)) (emphasis in original). On the basis of this

12

reasoning, the Supreme Court ruled that "where a party has provided false or intentionally misleading responses to written discovery . . . the aggrieved party may seek sanctions for the same, as allowing such hidden evidence to be admitted at trial simply because it has some probative value rewards and encourages deceptive behavior." *Elliott*, 301 Ga. at 596-97 (2) (a). The Supreme Court highlighted that "both our case law and statutory authority give the aggrieved party in such a circumstance more options for relief than a mere continuance; instead, a trial court clearly has the discretion to impose Rule 37 (d) sanctions if it finds that the offending party has provided discovery responses which were false or deliberately misleading." *Id*. at 597 (2) (a). Such sanctions include the exclusion of the evidence not disclosed to the other party. *Id*. at 599 (2) (b). *See also* OCGA § 9-11-37 (b) (2) (B) (authorizing the trial court to prohibit the offending party "from introducing designated matters in evidence").

Because the record supported the trial court's determination that the plaintiffs had failed to supplement their responses to the defense's interrogatories and because such failure made those responses false or misleading, the trial court had discretion to impose a range of sanctions on the plaintiffs, including exclusion of the affidavit. We find no abuse of the trial court's discretion in imposing this sanction, particularly

in light of its clear statement to the plaintiffs' counsel that although he could not utilize the affidavit to refresh Dr. Gadlage's recollection, nothing would forbid him of inquiring of Dr. Gadlage regarding the contents of their conversation that led the doctor to provide his affidavit.

*Judgment affirmed. Dillard, C. J., and Reese, J., concur.*