**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**February 17, 2021**

# In the Court of Appeals of Georgia

A20A1771. FOUNDATION CONTRACTORS, INC v. HOME
    DEPOT U.S.A., INC.

COLVIN, Judge.

We granted defendant Foundation Contractors, Inc. ("Foundation")'s application for interlocutory review of the trial court's order granting plaintiff Home Depot, U. S. A.'s motion for sanctions, striking Foundation's pleadings, and finding Foundation to be in default as a result of a discovery violation. On appeal, Foundation argues that the trial court erred by finding that Foundation wilfully failed to disclose the existence of an additional umbrella policy in written discovery responses. For the reasons discussed below, we reverse the trial court's grant of the motion for sanctions.

The record shows that in January 2016, part of a retaining wall at a Home Depot store collapsed. Shortly thereafter, Home Depot filed suit against the contractor, Sun Construction Group, Inc., for breach of contract as well as against the subcontractors for breach of contract and negligent construction. One of these subcontractors was Foundation, who had installed the retaining wall. At the time the suit was filed, Foundation was no longer in business and its insurer, National Trust, a wholly-owned subsidiary of FCCI Insurance Company, retained counsel to represent it.

Foundation had three relevant insurance policies: a $1 million commercial general liability policy in effect from October 1, 2009, through October 1, 2010; a $1 million commercial general liability policy in effect from October 1, 2010, through October 1, 2011; and a $ 5 million umbrella policy in effect from October 1, 2009, through October 1, 2010 (the "Umbrella Policy"). In April 2016, after Home Depot filed suit, these three policies were added to the insurer's claims file.

Home Depot served requests for production on Foundation, seeking all insurance policies. See OCGA § 9-11-26 (b) (2) ("A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment

2

which may be entered[.]"). Allison Escott, Foundation's counsel, contacted FCCI's adjustor, Alan Sienkiewicz, to request information about all applicable policies owned by Foundation. Sienkiewicz identified both of the general liability policies, but failed to identify the Umbrella Policy. Accordingly, in June 2016, Foundation only disclosed the two general liability policies in its initial responses to Home Depot's request for production. Thereafter, Foundation supplemented its response to the requests for production and again disclosed only the two general liability policies and policies with another insurer. The supplemental response did not disclose the Umbrella Policy.

Foundation answered and raised affirmative defenses to Home Depot's complaint, and later obtained summary judgment on Home Depot's negligent construction claim on statute of limitation grounds. Home Depot eventually settled or dismissed its claims against all defendants except Foundation. As part of its settlement with Sun Contruction Group, Home Depot obtained an assignment of claims that Sun Contractors and its insurers had against Foundation.

In late 2016, Sienkiewicz retired from FCCI. Between December 2016 and November 2017, the case was assigned to other FCCI adjusters. Eventually, in November 2017, Derrick Harris, a claims adjuster for FCCI, took over the case. He

was aware of the umbrella policy, but he did not know that it had not been disclosed. On January 2, 2019, while attending a site inspection with Foundation's counsel, Harris mentioned the umbrella policy, to which Foundation's counsel expressed surprise. The following day, Harris confirmed that there was a $5 million Umbrella Policy and sent the declarations page to counsel. On January 4, 2019, Foundation's counsel informed Home Depot of the umbrella policy and supplemented its discovery response to include the umbrella policy.[1]

Around this time, in response to Home Depot's request for an explanation as to why the Umbrella Policy was not disclosed earlier, Foundation's counsel stated that he could not speak to Foundation's efforts in 2016, as the company was no longer in business and he did not have any of its records. As to the actions of the insurer, counsel explained that the adjustor had only provided the two primary policies to defense counsel. Counsel could not explain why the umbrella policy was not

[1] In the meantime, in August 2018, FCCI and National Trust filed a separate declaratory judgment action in Fulton County Superior Court against Home Depot and various defendants, seeking a declaratory judgment that the general commercial liability policies it issued to Foundation did not cover the claims at issue in the instant action in Cobb County Superior Court. Foundation is not a party to that action. In the Fulton County litigation, the umbrella policy was disclosed. As part of that action, Home Depot sought to depose Sienkiewicz, and the plaintiff insurers filed a motion to stay and a motion to quash the deposition, which was denied. Sinkowicz's deposition testimony is not part of the appellate record in the instant case.

disclosed, and the firm's records contained no reference to the umbrella policy prior to January 3, 2019.

In March 2019, Home Depot moved for sanctions against Foundation on the basis that it had "intentionally misrepresent[ed] for more than 2 ½ years (through two mediations and settlements with other parties) the amount of insurance[.]" In response, Foundation denied that the failure to disclose was intentional and filed affidavits from Harris and its former and current counsel in support of its explanation. Foundation also argued that there was no prejudice because Home Depot never demanded that Foundation pay in excess of the $1 million policy limits and Foundation never offered more than a fraction of the $1 million policy limits.

After a hearing, the trial court ruled that Foundation had wilfully served false discovery responses which failed to disclose the existence of the umbrella policy. The trial court then granted Home Depot's motion for sanctions, struck Foundation's answer, and declared Foundation to be in default. This Court granted Foundation's application for interlocutory review from that order.

A trial court "has broad discretion in the enforcement of the discovery provisions of the Civil Practice Act, and we will not interfere with the exercise of that discretion absent clear abuse." (Punctuation and footnote omitted.) *Cameron v. Miles*,

311 Ga. App. 753, 754 (1) (716 SE2d 831) (2011). Accord *Resurgens, P. C. v. Elliott*, 301 Ga. 589, 597 (2) (b) (800 SE2d 580 ) (2017). This is because, unlike the appellate courts, the trial court has "directly supervised the ebb and flow of the discovery and trial process in the case and had the opportunity to observe and assess the conduct, demeanor, and credibility of the parties and their counsel throughout the proceedings." (Citation and punctuation omitted.) *Resurgens, P. C.*, 301 Ga. at 598 (2) (b).

1. Foundation argues that the trial court erred by declaring it to be in default in the absence of any evidence of wilfulness. We agree.

When a party has failed to respond to a document production request or an interrogatory, OCGA § 9-11-37 (d) (1) authorizes a trial court to "make such orders in regard to the failure as are just." Similarly, "an intentionally false response to a written discovery request, particularly when it concerns a pivotal issue in the litigation, equates to a total failure to respond, triggering OCGA § 9-11-37 (d) sanctions." *Resurgens*, 301 Ga. at 595-596 (2) (a).[2] The trial court may sanction the

---

[2] A discovery response "that falsely denies the existence of discoverable information is not exactly equivalent to no response. It is *worse* than no response. When there is no response to an interrogatory or the response is devoid of content, the party serving the interrogatory at least knows that it has not received an answer. It can move the court for an order to compel a response. If the response is false,

6

offending party by, inter alia, striking out pleadings or rendering a judgment by default. See OCGA § 9-11-37 (b) (2) (C). See *Resurgens*, 596-597 (2) (a) ("[W]here a party has provided false or intentionally misleading responses to written discovery . . . the aggrieved party may seek sanctions for the same").

However, a trial court's discretion as to sanctions is not unlimited, especially when asked to impose drastic sanctions. *North Druid Dev., LLC v. Post, Buckley, Schuh & Jernigan, Inc.*, 330 Ga. App. 432, 435 (1) (767 SE2d 29) (2014). "[D]ismissal and default are the harshest sanctions available for the trial court to impose, and we have cautioned against the use of these harsher sanctions except in extreme cases." (Punctuation and footnote omitted.) *Cameron*, 311 Ga. App. at 754 (1). "Moreover, before a trial court may enter the sanction of dismissal it must find that the offending party has acted wilfully[.]" (Citation omitted.) *North Druid Dev.*, 330 Ga. App. at 435 (1). "This is distinguished from an accidental or involuntary non-compliance. A conscious or intentional failure to act is in fact wilful." (Citation and punctuation omitted.) *General Motors Corp. v. Conkle*, 226 Ga. App. 34, 38 (1) (486 SE2d 180) (1997). See also *City of Griffin v. Jackson*, 239 Ga. App. 374, 377 (1) (520

however, the party serving the interrogatory may never learn that it has not really received the answer[.]" (Citation and punctuation omitted.) *Resurgens*, 301 Ga. at 596 (2) (a).

7

SE2d 510) (1999) (distinguishing between "an accidental or involuntary non-compliance" and a "conscious or intentional failure to act" that is willful). "In determining whether a party has abused discovery, the trial court sits as trier of fact, and this Court will uphold a finding of wilful discovery abuse if there is any evidence to support it." (Citation omitted.) *City of Griffin*, 239 Ga. App. at 377 (1).

Here, the trial court held a hearing to address Home Depot's motion for sanctions. Although the parties did not present witness testimony or other evidence at the hearing, they did reference affidavits and other evidence that was attached to their briefs regarding this motion. That evidence shows that, in April 2016, all three insurance policies were added to FCCI's insurer's claims file. Allison Escott, Foundation's attorney at the time the initial discovery responses were submitted, averred that she sent an email to Sienkiewicz, the adjustor for FCCI Insurance Company assigned to this case requesting information about all insurance policies applicable to Foundation. Escott averred that Sienkiewicz responded by providing her with information regarding the two $1 million commercial general liability policies, but he did not disclose the existence of the Umbrella Policy. Sienkiewicz retired from his job at FCCI soon after. Escott averred that, during her time working on the case, she was never made aware of the existence of the Umbrella Policy.

8

Edward Bresee, Jr., took over representation for Foundation after Escott left the firm. Bresee explained that he first learned of the existence of the Umbrella Policy while on a site visit with Derrick Harris, the adjuster who was assigned to the claim in November 2016, after Sienkiewicz's retirement. Harris averred that he knew about the existence of the Umbrella Policy, but did not realize it had not been disclosed until January 2019, when Bresee expressed surprise upon learning of same. Harris averred that he never concealed the Umbrella Policy and the claim file did not indicate that the failure to disclose was the result of anything other than a miscommunication or oversight. Upon learning of the Umbrella Policy, Bresee immediately contacted Home Depot's counsel and filed amended discovery responses.

Home Depot argues that the failure to disclose the Umbrella Policy in the initial discovery responses was willful because the policies were in the adjustor's files and Foundation "could and should have discovered all of the available policies at the outset of the litigation." In support of its argument, Home Depot cites to the deposition testimony of Derrick Harris, FCCI's adjuster, for the proposition that the Umbrella Policy was in the claims file from the beginning of the litigation. However, there is no evidence in the record that Foundation or its counsel in this case knew

9

about the Umbrella Policy at the time the discovery responses were completed or that Sienkowitz knowingly or wilfully withheld information regarding the Umbrella Policy when responding to Foundation's request for information. In fact, the evidence shows that as soon as Foundation's counsel learned of the existence of the Umbrella Policy, they immediately notified Home Depot and amended the discovery responses. The fact that the Umbrella Policy could have been discovered earlier – without more – is sufficient to show only "accidental or involuntary non-compliance," but not wilfulness.[3] (Citation omitted.) *City of Griffin*, 239 Ga. App. at 377 (1). See *Motani v. Wallace*, 251 Ga. App. 384, 386 (1) (554 SE2d 439) (2001) (holding that trial court's striking of defendants' answer was too severe when defendants' counsel presented evidence that the failure to comply with a discovery order was accidental and not intentional and there was no evidence that the failure was wilful, in bad faith, or in conscious disregard of the consequences). Compare *Resurgens*, 301 Ga. 597-598

---

[3] Home Depot also claims that there is further evidence that Foundation acted wilfully because it did not include the Umbrella Policy in the Fulton County declaratory judgment action and refused to investigate the matter as part of the declaratory judgment action. But Harris deposed that the Umbrella Policy was not included in the declaratory judgment action because coverage would only apply if the underlying liability polices applied. Moreover, Foundation is not a party to the Fulton County action; only the insurers and Home Depot are named parties, and Foundation's counsel in the instant case did not participate in that litigation.

(2) (b) (trial court did not abuse its discretion in excluding witness that was deliberately not identified in prior written discovery responses); *MARTA v. Doe*, 292 Ga. App. 532, 536-537 (1) (664 SE2d 893) (2008) (trial court did not abuse its discretion in striking MARTA's answer when there was evidence that MARTA provided *intentionally false* response to discovery requests).

Because the record does not support a finding that Foundation acted wilfully or with a conscious or intentional failure to discover the existence of the Umbrella Policy, "we conclude that the sanction chosen by the court was too severe for the facts presented." (Punctuation and footnote omitted.) *Motani*, 251 Ga. App. at 386 (1). Accordingly, we reverse the trial court's order granting Home Depot's motion for sanctions and striking Foundation's answer.

2. As a result of our holding in Division 1, we need not address Foundation's remaining enumerations of error.

*Judgment reversed. Reese, P. J., and Markle, J., concur.*